UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-11678-RGS

O'BRIEN INVESTMENT PARTNERS, LLC

v.

INVITROGEN CORPORATION

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

August 19, 2009

STEARNS, D.J.

On October 31, 2008, O'Brien Investment Partners, LLC, brought this action against Invitrogen Corporation for rents allegedly owing under several commercial leases. On May 12, 2009, the court denied Invitrogen's motion to dismiss and granted the parties a brief period of discovery. On July 9, 2009, Invitrogen filed this motion for summary judgment.

BACKGROUND

The leases at issue, which were executed in 1992, 1994, 1995, and 1996, involve commercial space in Hopkinton, Massachusetts. The leases were entered into by landlord Thomas O'Brien, as Trustee of Jelric Realty Trust (Jelric), and Quality Controlled Biochemical, Inc. (QCB). The leases were amended over the years, primarily to extend the termination dates and to adjust the rents.[1] In February of 2001, QCB's stock was acquired by BioSource International, Inc. (BioSource). In May of 2001, O'Brien and

---

[1] The first lease was executed in August of 1992, with subsequent amendments in 1993, 1995, 1996, and 2001. The second lease was executed in 1994, with subsequent amendments in 1993, 1995, 1996, and 2001. The third lease was executed in 1995, with subsequent amendments in 1996 and 2001. The fourth lease was executed in 1996, with one amendment in 2001.

BioSource amended the leases to extend the terms to expire on May 31, 2006.

In December of 2004, BioSource sold its stock in QCB to Dennis DiSorbo for $700,000. On December 28, 2004, in connection with the sale, BioSource and O'Brien signed a "Consent Letter" in which O'Brien consented to an assignment by BioSource to QCB of "all of BioSource's right, title, interest and obligations" under each of the four leases. BioSource agreed that it and QCB "are and shall remain jointly and severally, fully and unconditionally responsible for all Lease obligations under the Agreements. The parties acknowledge that Jelric shall continue to hold all current security deposits pursuant to the applicable provisions of the Agreements." The specific language of the Consent Letter identified each of the leases as follows.

> Lease Agreement . . . by and between Jelric Realty Trust and Quality Controlled Biochemical, Inc. (as predecessor in interest to Seller), **as amended**, covering certain space being 3 Avenue D in the Hopkinton Industrial Park in Hopkinton, Massachusetts.

(Emphasis added). On May 4, 2005, less than four months after the Consent Letter was signed, O'Brien and QCB executed amendments to the four leases, extending their term by six years from May 31, 2006, until May 31, 2012. BioSource was not made aware of the extensions.

At some point, QCB stopped paying the rents on the four leases. On March 7, 2008, O'Brien sent a letter to QCB notifying it that it was in default, and demanding $33,848.82 in back rent. On March 18, 2008, O'Brien sent a similar demand letter to Invitrogen, BioSource's successor-in-interest. Invitrogen denied any liability. O'Brien subsequently brought this Complaint in two counts seeking payment of rent (Count I) and

reimbursement for repairs and remediation (Count II).  On November 24, 2008, Invitrogen moved to dismiss the Complaint.  Invitrogen also sought Rule 11 sanctions against O'Brien's counsel.  On May 12, 2009, the court denied the motion to dismiss (and for sanctions), observing that "[w]hile the court is of the preliminary view that Invitrogen's interpretation [of the Consent Letter] is the more reasonable, the resolution of this issue is inappropriate at this early stage in the proceedings given the possible ambiguity of the language in the Consent Letter."  Memorandum and Order on Defendant's Motion to Dismiss at 3.

## DISCUSSION

"Contract interpretation questions, under Massachusetts law, are ordinarily questions of law for a court; contract law, unlike tort law, thus favors judicial resolution of disputes."  Nadherny v. Roseland Prop. Co., Inc., 390 F.3d 44, 48 (1st Cir. 2004). Contractual language is considered ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one."  Dasey v. Anderson, 304 F.3d 148, 158 (1st Cir. 2002).  Although the court previously ruled that the term "as amended" in the Consent Letter was "possibl[y] ambigu[ous]," this indulgent view, while appropriate at the motion to dismiss stage, is no longer required.  The court now finds that because there is only one reasonable interpretation of the term "as amended," as it appears in the Consent Letter, there is no ambiguity.

O'Brien makes the untenable argument that when BioSource agreed to be liable for the leases "as amended," it committed itself to guarantee all of QCB's lease obligations,

3

not only through May of 2006 (when the leases were to expire), but for any subsequent amendments entered into by O'Brien and QCB, made at any time thereafter, in any amount, and without BioSource's knowledge or consent.  The suggestion that BioSource agreed to a guarantee in perpetuity of all of QCB's obligations under the leases (even after QCB ceased to exist as a legal entity) simply defies logic.  "Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 302 (1st Cir. 2001).  The court cannot fathom why any commercial entity, after an arms-length sale of assets to a successor, would bind itself as a guarantor for an unlimited term, for unlimited financial obligations incurred by an entity over which it had no control, without first requiring notice and consent.  Where, as here,

> a contract might arguably appear ambiguous from its words alone, the decision remains with the judge if the alternative reading is inherently unreasonable when placed in context. Contract interpretation under Massachusetts law depends heavily on context and recognizes that words can have different meanings in different contexts. Thus, agreements should be construed with reference to the situation of the parties when they made it and to the objects sought to be accomplished.  This sort of contextual evidence is not the kind of evidence that is intended to be barred by the parol evidence rule if no ambiguity is found; rather, context should be used as a tool to find unambiguous meaning in the first place.

McAdams v. Massachusetts Mut. Life Ins. Co., 391 F.3d 287, 299 (1st Cir. 2004) (internal citations and quotation marks omitted).

As of May 4, 2005, when O'Brien and QCB extended the leases, there were only thirteen months remaining on their terms.  At that point, QCB's remaining rental liability was $141,638.38.  However, the 2005 Lease Amendments extended the terms of the leases for another six years, resulting in additional rental obligations of $846,483.84.

"Agreements, especially commercial arrangements, are designed to make sense.  If one reading produces a plausible result for which parties might be expected to bargain, that reading has a strong presumption in its favor as against another reading producing an unlikely result."  Nat'l Tax Inst. v. Topnotch at Stowe Resort and Spa, 388 F.3d 15, 19 (1st Cir. 2004).  It is simply not conceivable that BioSource, which received only $700,000 from DiSorbo for the purchase of QCB, would have agreed to guarantee an additional obligation for $846,483.84, and other sums ad infinitum.  Nor is it plausible that BioSource would have agreed to be liable for potential lease amendments without making its future liability contingent upon notice and consent.

The only plausible interpretation of the term "as amended" is that BioSource agreed to be liable for QCB's obligations under the leases, as they had been amended as of December of 2004, the last operative date before the sale.  In cases where  "no reasonable person could interpret the contract as one party does, the court may enter judgment against that party."  Nadherny, 390 F.3d at 48-49.  Such is the case here.

## ORDER

For the foregoing reasons, Invitrogen's motion for summary judgment will be ALLOWED.  The Clerk will enter judgment for defendant and close the case.


SO ORDERED

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

5